■ In the Matter of SLS Residential, Inc., et al., Respondents, v New York State Office of Mental Health, et al., Appellants. [889 NYS2d 84]—

In a proceeding pursuant to CPLR article 78 to review a determination of the Commissioner of the New York State Office of Mental Health, which, upon adopting the report of a hearing officer dated April 17, 2008, made after a hearing, imposed a fine on the petitioners in the total sum of $110,000 for certain statutory and regulatory violations, the New York State Office of Mental Health and Michael F. Hogan, as Commissioner of the New York State Office of Mental Health, appeal from an order of the Supreme Court, Putnam County (O'Rourke, J.), dated December 3, 2008, which, inter alia, granted the petition, annulled the determination, and directed the petitioners to schedule a hearing on the issue of damages.

Ordered that the appeal is dismissed and the order is vacated; and it is further,

Adjudged that the petition is granted to the extent that so much of the determination as imposed a fine in the sum of $10,000 upon the petitioners for the alleged illegal use of manual restraints on the residents of their facilities is annulled, the petition is otherwise denied, and the determination is otherwise confirmed; and it is further,

Ordered that one bill of costs is awarded to the appellants.

The petitioners operate two community residences and one outpatient clinic, all of which are licensed by the New York State Office of Mental Health (hereinafter OMH). On November 6, 2006, OMH conducted a two-day survey of the petitioners' licensed facilities. Subsequently, by letter dated November 17, 2006, OMH directed the petitioners to cease and desist all admissions to the licensed facilities and to cease and desist the use of a facility known as "the Barn." In addition, OMH imposed a fine in the sum of $10,000 for each of eight separate alleged statutory and regulatory violations, totaling $80,000. In a letter dated November 28, 2006, OMH informed the petitioners that it found two violations of the cease and desist orders, and imposed an additional fine in the sum of $15,000 for each violation, totaling $30,000. Consequently, the total fine sought to be imposed against the petitioners was in the sum of $110,000.

After an evidentiary hearing, a hearing officer upheld OMH's allegations that the petitioners violated certain statutes and regulations and two cease-and-desist orders, and recommended that a total fine in the sum of $110,000 be imposed on the petitioners. The report of the hearing officer was adopted in a determination of Michael F. Hogan, the Commissioner of OMH. The petitioners then commenced this proceeding pursuant to CPLR article 78 to review the determination and for an award of damages. In an order dated December 3, 2008, the Supreme Court granted the petition, annulled the determination, and directed the petitioners to schedule a hearing date before the court on the issue of damages. OMH and Hogan appeal. We dismiss the appeal, vacate the order, and grant the petition in part and deny it in part.

"Upon judicial review of a determination rendered by an administrative body following a hearing, this Court's function is limited to consideration of whether the determination is supported by substantial evidence" (*Matter of S & S Pub, Inc. v New York State Liq. Auth.*, 49 AD3d 654, 654 [2008]; *see Matter of Lahey v Kelly*, 71 NY2d 135, 140 [1987]; *300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 179-180 [1978]). Since the petition raises a substantial evidence ques-

tion, and no objections were raised that could have terminated that proceeding within the meaning of CPLR 7804 (g), the Supreme Court should have transferred the proceeding to this Court (*see Harper v W.E. Rest., Inc.*, 38 AD3d 602, 603 [2007]; *Matter of Sureway Towing, Inc. v Martinez*, 8 AD3d 490 [2004]; *Matter of Stein v County of Rockland*, 259 AD2d 552 [1999]). Nonetheless, since the record is now before us, we will treat the proceeding as if it had been properly transferred, and review the proceeding de novo (*see Harper v W.E. Rest., Inc.*, 38 AD3d at 603; *Matter of Sureway Towing, Inc. v Martinez*, 8 AD3d 490 [2004]; *Matter of Stein v County of Rockland*, 259 AD2d 552 [1999]).

One of the eight alleged statutory and regulatory violations upon which OMH predicted the imposition of a $10,000 fine involved the alleged illegal use of manual restraints on the residents of the petitioners' facilities. Mental Hygiene Law § 33.04 defines "restraint" as "the use of an apparatus on a patient which prevents the free movement of both arms or both legs or which totally immobilizes such patient, and which the patient is unable to remove easily" (Mental Hygiene Law § 33.04 [a]). Mental Hygiene Law § 33.04 (b) provides: "Restraint shall be employed only when necessary to prevent a patient from seriously injuring himself or others. It may be applied only if less restrictive techniques have been clinically determined to be inappropriate or insufficient to avoid such injury. It may not be employed as punishment, for the convenience of staff, or as a substitute for treatment programs." Regulations promulgated by OMH also define the term "restraint" as including the use of an apparatus (*see* 14 NYCRR 27.2 [d]). However, according to current OMH policy, manual restraints that are employed without the use of an apparatus, such as the "brief safety interventions" used by the petitioners, constitute a "restraint," and should be employed only where there is a danger to life and limb, and only as a last resort.

State Administrative Procedure Act § 202 (1) (a) provides, in relevant part: "Prior to the adoption of a rule, an agency shall submit a notice of proposed rule making to the secretary of state for publication in the state register and shall afford the public an opportunity to submit comments on the proposed rule" (*see* NY Const, art IV, § 8). A "rule" is defined by the State Administrative Procedure Act to include "the whole or part of each agency statement, regulation or code of general applicability that implements or applies law" (State Administrative Procedure Act § 102 [2] [a] [i]). A "rule or regulation," for purposes of the New York State Constitution, has been described

as "any kind of legislative or quasi-legislative norm or prescription which establishes a pattern or course of conduct for the future" (*People v Cull*, 10 NY2d 123, 126 [1961]). The Court of Appeals has stated that a rule or regulation is "a fixed, general principle to be applied by an administrative agency without regard to other facts and circumstances relevant to the regulatory scheme of the statute it administers" (*Matter of Roman Catholic Diocese of Albany v New York State Dept. of Health*, 66 NY2d 948, 951 [1985]; *see Matter of Suffolk Regional Off-Track Betting Corp. v New York State Racing & Wagering Bd.*, 11 NY3d 559, 572 [2008]; *Cubas v Martinez*, 8 NY3d 611, 621 [2007]; *Matter of Cordero v Corbisiero*, 80 NY2d 771, 772-773 [1992]). Excluded from the definition of a "rule" are "forms and instructions, interpretive statements and statements of general policy which in themselves have no legal effect but are merely explanatory" (State Administrative Procedure Act § 102 [2] [b] [iv]).

OMH's policy, which essentially amends the Mental Hygiene Law and existing regulations to include "manual restraints" within the meaning of "restraint," is a rule within the meaning of the New York Constitution and State Administrative Procedure Act. Contrary to OMH's contention, its policy does not merely interpret existing laws and regulations regarding restraints (*see* Mental Hygiene Law § 33.04 [d]-[f]; 14 NYCRR 27.2 [d]; 587.6 [g]). Rather, OMH is attempting to change Mental Hygiene Law § 33.04 (a) and 14 NYCRR 27.2 (d) by redefining the term "restraint" to include manual restraints (*cf. Matter of Pharmacists Socy. of State of N.Y., Inc. v Pataki*, 58 AD3d 924, 926 [2009]).

Accordingly, OMH's failure to officially promulgate its policy as a rule or regulation violated the New York Constitution and State Administrative Procedure Act (*see Matter of Robinson v Perales*, 166 AD2d 594, 597 [1990]). Since there was no evidence that the petitioners used an apparatus to restrain residents, the $10,000 fine imposed on the petitioners for the alleged use of illegal restraints was not supported by substantial evidence, and that portion of the determination must be annulled.

However, there is substantial evidence in the record to support the remaining fines imposed on the petitioners. The evidence demonstrated that the petitioners limited the rights of residents to receive visitors and communicate freely with persons inside and outside of the facility, in violation of 14 NYCRR 527.5 (b) (9) and (c). There was also substantial evidence that the petitioners violated the privacy rights of residents through use of a random drug testing policy, which required

residents to be watched by a staff member while providing a urine sample (*see* 14 NYCRR 527.5 [b] [8]).

In addition, substantial evidence supports the conclusion that the petitioners imposed improper punitive measures on residents through an Antisocial Personality Disorder group (hereinafter ADP group), which, in some cases, was not voluntary in nature. Consequences imposed upon members of the ADP group included the loss of telephone and communication rights, and the wearing of an orange jumpsuit, which made some residents feel humiliated and invisible (*see* 14 NYCRR 527.5 [b] [5]). Substantial evidence further supports the determination that the petitioners, through their policies, placed improper restrictions on the ability of residents to leave the facilities and the programs (*see* Mental Hygiene Law § 31.19 [a]). In addition, the record demonstrates that the petitioners did not have a viable incident management program, in violation of 14 NYCRR part 524, and failed to fingerprint several employees hired after April 1, 2005, in violation of Mental Hygiene Law § 31.35 (a) and 14 NYCRR 550.5. Furthermore, there was substantial evidence that the petitioners' clinical program was not "clearly identifiable" so as to distinguish it from the residential programs, and did not have "separately identifiable staff, space and program policies and procedures" (14 NYCRR 587.5 [c]). Furthermore, OMH presented substantial evidence that the petitioners admitted two individuals after receiving the cease and desist orders barring such admission, and used the Barn to interview one of those individuals, in further violation of the cease and desist orders.

Accordingly, the fines imposed on the petitioners for these violations, in the total sum of $100,000, were supported by substantial evidence.

To the extent the petition seeks an award of damages, it must be denied, since the petitioners are essentially seeking consequential damages, which are not recoverable in a proceeding pursuant to CPLR article 78 (*see* CPLR 7806; *Matter of Gross v Perales*, 72 NY2d 231, 236-237 [1988]; *Rose Lee Mfg. v Chemical Bank*, 186 AD2d 548, 551 [1992]).

The petitioners' remaining contentions are without merit. Rivera, J.P., Fisher, Belen and Austin, JJ., concur.