**Nicholas J. ROMANO, et al., Plaintiffs,**

v.

**SLS RESIDENTIAL, INC.
et al., Defendants.**

**No. 07 Civ. 0234(KTD).**

United States District Court,
S.D. New York.

June 22, 2011.

Michael Howard Sussman, Sussman & Watkins, Goshen, NY, for Plaintiffs.

Marc Robert Wilner, Paul F. Callan, Callan, Koster, Brady & Brennan LLP, New York, NY, Gerald Lawrence, Richard Wolfe Cohen, Lowey Dannenberg Cohen & Hart, PC, White Plains, NY, for Defendants.

### MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge.

Plaintiffs bring this class action lawsuit against SLS Residential, Inc., SLS Health, Inc., SLS Wellness, Inc., and Supervised Lifestyles, Inc., and some of their principals and employees (collectively "SLS"). Before the court is Plaintiffs' motion for partial summary judgment. For the following reasons, the motion is DENIED.

### I. *Factual Background*

SLS is a private mental health facility providing residential and out-patient treatment to young adults with psychiatric dis-

orders. Plaintiffs were patients of SLS during the certified class period of July 2004 to May 31, 2006. Defendants Joseph Santaro and Alfred Bergman are the owners of SLS. Defendant Shawn Prichard is a licensed psychologist and was SLS's Chief Clinical Officer. The other individual defendants—Matt Sena, Robert Giordano, Robert Deletis, and John Doe—are employees of SLS. Plaintiffs allege that defendants, rather than providing therapeutic treatment, engaged in a pattern of behavior whereby they illegally assaulted, restrained, punished and isolated patients.

Plaintiffs' amended complaint stated causes of action under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973, and New York Executive Law section 296, as well as claims for deceptive business practices, negligent and intentional infliction of emotional distress, negligent administration, and breach of fiduciary duty. In a memorandum decision and order by Judge Robinson, dated October 10, 2007, the court subsequently dismissed Plaintiffs' claims under the ADA and the Rehabilitation Act, and Plaintiffs' claim of negligent administration as against defendants Sena, Giordano, Doe, and Caputo.

### 1. *The Office of Mental Health's Investigations of SLS*

### a. *The 2008 Report*

On November 6–7, 2006, the New York Office of Mental Health ("OMH") conducted a two-day on-site review of SLS' facilities. Subsequently, by letter dated November 17, 2006, OMH directed SLS to cease and desist all admissions into its facilities and imposed a fine in the sum of $10,000 for each of eight separate alleged statutory and regulatory violations. OMH later notified SLS that it had discovered two violations of its cease and desist order,

and imposed an additional fine of $15,000 for each violation.

SLS made a timely request for a hearing on these charges. Michael F. Hogan, the Commissioner of OMH, issued a hearing notice on April 11, 2007, and appointed a hearing officer to preside and prepare a report setting forth findings and recommendations regarding the charges.

The hearing was conducted over twenty hearing days, during which fifteen witnesses testified. Both SLS and OMH were represented by counsel during the hearing. In a report dated April 17, 2008 ("2008 Report"), the hearing officer upheld OMH's allegations that SLS violated certain statutes and regulations and two cease-and-desist orders, and recommended that a total fine in the sum of $110,000 be imposed on SLS. Specifically, the 2008 Report found:

1. SLS staff employed illegal manual restraints on residents.

2. SLS routinely violated residents' rights to receive visitors at reasonable times and freely communicate with persons outside the facility.

3. SLS violated residents' privacy rights by opening residents' packages, engaging in resident room and body searches, and engaging in "body-mapping" of residents.

4. SLS imposed improper punitive measures on residents through an Antisocial Personality Disorder group, included the loss of telephone and communication rights, and the wearing of an orange jumpsuit, which made some residents feel humiliated and invisible.

5. SLS failed to operate a viable Incident Management Program.

6. SLS operated its residential and clinical programs as indistinguishable from each other.

7. SLS, through their policies, placed improper restrictions on the ability of residents to leave the facilities and the programs.

8. SLS failed to fingerprint several employees hired after April 1, 2005.

The 2008 Report was adopted in a final determination by Commissioner Hogan.

SLS then commenced a proceeding under New York Civil Practice Laws and Rules article 78 in New York Supreme Court, Putnam County, to review the determination and for a finding of damages. In an order dated December 3, 2008, the Supreme Court granted the petition, annulled the determination, and directed the petitioners to schedule a hearing date before the court on the issue of damages.

b. *The Appellate Division's Decision*

On appeal, the Appellate Division, Second Department, upheld the determinations of OMH regarding the charges, except for its determination concerning illegal restraints. *See Matter of SLS Residential, Inc. v. New York State Office of Mental Health*, 67 A.D.3d 813, 889 N.Y.S.2d 84 (2d Dep't 2009). The court noted that New York law and OMH regulations define a restraint as an "apparatus." *Id.* at 815, 889 N.Y.S.2d 84. Although it was OMH policy that the type of manual restraints employed without the use of an apparatus, such as the ones used by SLS, constituted an illegal restraint under New York Mental Health Law, OMH had never officially promulgated that policy as a rule or regulation as required by the New York Constitution. *Id.* at 815–16, 889 N.Y.S.2d 84. Since there was no evidence that SLS used an apparatus to restrain residents, the Appellate Division held that the $10,000 fine for the use of illegal restraints was not sup-

ported by substantial evidence, and that portion of OMH determination must be annulled. *Id.* at 816, 889 N.Y.S.2d 84. The court then held, however, that there was substantial evidence to support the other conclusions and fines, and upheld the remainder of OMH's determination. *Id.* at 816–17, 889 N.Y.S.2d 84. The Court of Appeals denied SLS' motion for leave to appeal. *See Matter of SLS Residential, Inc. v. New York State Office of Mental Health,* 14 N.Y.3d 713, 930 N.E.2d 768, 904 N.Y.S.2d 694 (2010).

### c. The 2010 Report

By a letter dated August 29, 2008, OMH notified SLS of its determination to revoke all three of the SLS Operating Certificates. Following a hearing examining the period from November 2006 to August 29, 2008, an OMH report ("2010 Report") found a number of violations, including that SLS restricted residents' right to leave the premises or contact people outside the program, and restricted residents' visitation rights. OMH's allegation that SLS continued to use illegal restraints, however, was dismissed due to the Appellate Division's decision. The 2010 Report was adopted in a final determination of Commissioner Hogan and SLS was directed to return their operating certificates.

### II. Plaintiffs' Motion

Plaintiffs move for partial summary judgment on their claim under New York Executive Law section 296, and their negligent and intentional infliction of emotional distress, negligent administration, and breach of fiduciary duty causes of action. In connection with its motion, Plaintiffs assert that, under the doctrine of collateral estoppel, OMH's 2008 Report should have preclusive effect, and SLS is barred from relitigating any factual issues decided by OMH. In response, SLS argues that collateral estoppel is inapplicable to the 2008 Report, and that, since Judge Robinson dismissed Plaintiffs' federal claims, the court should decline to exercise its pendency jurisdiction and remand the case to state court.

### III. Jurisdiction

Plaintiffs have sufficiently established diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA").[1] *See* 28 U.S.C. § 1332(d).

■ CAFA amends the diversity jurisdiction statute and confers original federal jurisdiction over any class action involving (1) 100 or more class members; (2) an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs; and (3) minimal diversity (where at least one plaintiff and one defendant are citizens of different states). 28 U.S.C. § 1332(d)(2), (5)(b), (6); *Blockbuster, Inc. v. Galeno,* 472 F.3d 53, 56 (2d Cir.2006). Here, minimal diversity is met because

---

1. As Plaintiffs have sufficiently alleged diversity jurisdiction, it is unnecessary to analyze whether this Court should exercise supplemental jurisdiction over Plaintiffs' state law claims. However, since Plaintiffs' action was commenced over three years ago, and Judge Robinson has already ruled on three motions, including SLS' motion to dismiss and Plaintiffs' motion for class certification, interests of judicial economy and fairness strongly point to a continued exercise of jurisdiction by this Court. *See O'Neill v. Hernandez,* No. 08 Civ. 1689(KMW), 2010 WL 1257512, at *12, 2010 U.S. Dist. LEXIS 33262, at *34 (S.D.N.Y. Mar. 25, 2010) (holding that interests of fairness and judicial economy were best served by supplemental jurisdiction, where "[t]he parties have invested substantial resources into the federal suit, including briefing on multiple dispositive motions and two amended pleadings" and the court "possess[ed] great familiarity with the facts of the case and Plaintiff's claims").

class representative Romano is a citizen of New Jersey and SLS is a citizen of New York. The amount in controversy exceeds $5 million and the list of putative class members contains over 250 names. SLS contends, however, that that CAFA's mandatory "local controversy," "home state controversy," exceptions and discretionary "interests of justice" exception preclude jurisdiction. Since SLS is invoking exceptions to CAFA jurisdiction, it bears the burden of proving that these exceptions apply. *See Anirudh v. CitiMortgage, Inc.*, 598 F.Supp.2d 448, 451 (S.D.N.Y.2009).

The local controversy exception provides that a court must deny jurisdiction if

(1) more than two-thirds of the putative class members are citizens of the state in which the action was originally filed;

(2) there is at least one defendant from whom "significant relief" is sought by the class members, whose alleged conduct forms a "significant basis" for the asserted claims, and who is a citizen of the state in which the action was originally filed;

(3) the principal injuries suffered by the class were incurred in the state in which the action was originally filed; and

(4) no other class action asserting the same or similar factual allegations has been filed against any of the defendants within the past three years.

§ 1332(d)(4)(A); *Mattera v. Clear Channel Commc'ns, Inc.*, 239 F.R.D. 70, 77 (S.D.N.Y.2006).

Additionally, a court must decline to exercise jurisdiction under the "home state controversy" exception where two-thirds or more of the proposed class members, and the primary defendants, are citizens of the state in which the action was originally filed. § 1332(d)(4)(B); *Mattera*, 239 F.R.D. at 77.

SLS submits a list of potential class members to support its motion, but contends, citing to *Mattera v. Clear Channel Communications, Inc.*, 239 F.R.D. 70 (S.D.N.Y.2006), that the court need not have definite evidence of the percentage of New York class members, since the facts indicate that it is "reasonably likely" that a significant number of the class members are from New York. *See id.* at 80.

In *Mattera*, although the defendants presented no evidence concerning citizenship, the court concluded that it was "reasonably likely" that more than two-thirds of the class were New York citizens, since the class action was brought by New York employees of New York radio stations. *Id.* at 80.

The present case is distinguishable from *Mattera*. The class includes residents of SLS facilities between July 2004 and May 31, 2006. As more than four years have passed, it cannot be as easily assumed that most of the class remains in New York. Also, the class members are not the willing employees of *Mattera*, they are former psychiatric patients. Arguably, a residential psychiatric facility like SLS could attract out-of-staters seeking treatment and these patients would be less likely to remain in area once their treatment was completed.

Regardless, the presumption SLS proposes is undercut by its own evidence. SLS' list of potential class members contains 269 names, of which, by this Court's calculation, 96 are New York residents. This is barely above one-third and well below the requisite two-thirds needed for both exceptions. Accordingly, SLS has not met its burden of proof and the mandatory "local controversy" and "home state controversy" exceptions are inapplicable.

■ SLS next argues that the court remand the case under the discretionary "interests of justice" exception to CAFA. A district court may "looking at the totality of the circumstances" decline jurisdiction over a class action, where

more than one-third of the proposed class in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of-

(A) whether the claims asserted involve matters of national or interstate interest;

(B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;

(C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;

(D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;

(E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and

(F) whether, during the 3–year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

28 U.S.C. § 1332(d)(3).

While some of these factors may arguably point in SLS' favor, it is not clear that the minimum requirements for remand are met. 28 U.S.C. § 1332(d)(3) requires that "the primary defendants are citizens of the State in which the action was originally filed," but Defendant Prichard is a citizen of Connecticut.

The term "primary defendant" is not defined in CAFA. Courts have defined it variously as "(1) who has the greater liability exposure; (2) is most able to satisfy a potential judgment; (3) is sued directly, as opposed to vicariously, or for indemnification or contribution; (4) is the subject of a significant portion of the claims asserted by plaintiffs; or (5) is the only defendant named in one particular cause of action." *Brook v. UnitedHealth Group Inc.*, No. 06 CV 12954(GBD), 2007 WL 2827808, at \*5 (S.D.N.Y. Sep. 27, 2007). Accordingly, where "defendants are each equally culpable and liable for the injuries purportedly suffered by the putative class members, there is no rational basis upon which to differentiate the defendants' status as being primary or secondary." *Id.* at \*6; *see Sorrentino v. ASN Roosevelt Ctr., LLC,* 588 F.Supp.2d 350, 359 (E.D.N.Y.2008). Here, Prichard is deemed equally liable to the other defendants and is sued directly, rather than vicariously or for indemnification; there is "no rational basis to differentiate" Prichard from other defendants.

Since the minimum requirements for the "interests of justice" exception are not met, the court will not remand the case to state court and will continue to exercise jurisdiction over the case.

## IV. *Collateral Estoppel*

The court now turns to Plaintiffs' contention that, under the collateral estoppel doctrine, the OMH findings upheld by the Appellate Division have preclusive effect on this case.

■ The doctrine of collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceed-

ing and decided against that party or those in privity, whether or not tribunals or causes of action are the same." *Ryan v. N.Y. Tel., Co.*, 62 N.Y.2d 494, 500, 467 N.E.2d 487, 478 N.Y.S.2d 823 (1984). In order for a party to invoke the doctrine, the identical issue must have been decided in the prior action and the party to be estopped must have had a " 'full and fair opportunity to contest the decision now said to be controlling.' " *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 730 (2d Cir.2001) (quoting *Schwartz v. Pub. Adm'r*, 24 N.Y.2d 65, 71, 246 N.E.2d 725, 298 N.Y.S.2d 955 (1969)).

### 1. *State Court Decisions*

██ Under the Full Faith and Credit Act, 28 U.S.C. § 1738, when a state administrative proceeding is reviewed by a state court, the court's judgment is entitled to full faith and credit in federal court. *See Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). Thus, "federal courts must give state-court judgments the same preclusive effect as they would receive in courts of the same state." *Burkybile v. Bd. of Educ.*, 411 F.3d 306, 310 (2d Cir.2005).

Accordingly, the Appellate Division's decision is entitled to full faith and credit, requiring this Court to apply New York's collateral estoppel rules. *See Wilder v. Thomas*, 854 F.2d 605, 616–17 (2d Cir. 1988) ("If the elements of collateral estoppel under New York law are otherwise satisfied, the New York courts' affirmance of the results of the [administrative process] are entitled to preclusive effect."). The Appellate Division, however, did not uphold OMH's charge concerning SLS' use

of illegal restraints. Therefore, it is necessary to examine whether the underlying factual findings by OMH regarding restraints have any preclusive effect.

### 2. *State Administrative Agency Decisions*

██ "[W]hen a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, ... federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) (internal quotation marks and citation omitted); *accord Farrell v. Burke*, 449 F.3d 470, 482 (2d Cir. 2006).

██ SLS contends that OMH's ultimate determination that the use of restraints violated residents' rights cannot be given preclusive effect, since courts cannot apply collateral estoppel to "agency determinations of mixed law and fact." *See Akgul v. Prime Time Transp. Inc.*, 293 A.D.2d 631, 633, 741 N.Y.S.2d 553 (2d Dep't 2002) ("[A]n administrative agency's final conclusion, characterized as an ultimate fact or a mixed question of fact and law, is not entitled to preclusive effect."); *accord O'Gorman v. Journal News Westchester*, 2 A.D.3d 815, 817, 770 N.Y.S.2d 121 (2d Dep't 2003); *see Allied Chem. v. Niagara Mohawk Power Corp.*, 72 N.Y.2d 271, 276, 528 N.E.2d 153, 532 N.Y.S.2d 230 (1988) ("While issue preclusion may arise from the determination of administrative agencies, in that context, the doctrine is applied more flexibly").[2] An

---

**2.** Plaintiffs argue that the *Akgul* court misinterpreted language from *Lee v. Jones*, 230 A.D.2d 435, 659 N.Y.S.2d 549 (3d Dep't 1997), in reaching this conclusion. *Lee* noted that the Appellate Division, Third Depart-

ment, has "[taken] great pains to contrast an administrative agency's final conclusion, characterized as an ultimate fact or a mixed question of fact and law and not entitled to preclusive effect with the underlying 'eviden-

agency's determination of factual issues, however, will be given preclusive effect. *See Akgul*, 293 A.D.2d at 633, 741 N.Y.S.2d 553; *Lee v. Jones*, 230 A.D.2d 435, 438, 659 N.Y.S.2d 549 (3d Dep't 1997) ("[T]he doctrine of collateral estoppel will permit any discrete factual issue necessarily decided in the prior action to be given preclusive effect, regardless of the over-all legal context."). Therefore, while OMH's ultimate determinations concerning the seven charges upheld by the Appellate Division will be given preclusive effect, only OMH's evidentiary findings on the issue of manual restraints can have preclusive effect.[3]

### 3. The Time Period of the 2008 Report

█ SLS argues that Plaintiffs have not shown "identity of issue," since the alleged violations contained in the OMH reports did not occur during the relevant class period of July 2004 to May 31, 2006. The OMH held two separate sets of hearings which led to two reports. While the 2010 Report explicitly sets a "relevant time period" of November 2006 to August 29, 2008, the 2008 Report does not. However, some of the violations detailed in the 2008 Report occurred within the class period.

*Manual Restraints:* The 2008 Report notes that the OMH, in a letter dated February 22, 2005, advised SLS that the manual "safety holds" utilized by SLS upon its residents were deemed restraints and were not permitted in its community residence program. (Plaintiff's Ex. C ¶ 20). The OMH sent similar letters to SLS in March and August of 2005. Although SLS initially disagreed with the OMH's interpretation of the law, it agreed to comply with its opinion following a meeting with OMH officials in September 2005. (*Id.* ¶¶ 21–22). OMH subsequently determined that, between January and November 2006, SLS used illegal restraints on its residents twenty-three times. (*Id.* ¶ 23).

*Restrictions on Residents' Right to Leave the Program:* In letters dated May and August 2005, and at meetings in September 2005 and October 2006, OMH informed SLS that its residents could not be involuntarily detained. (*Id.* ¶ 81–82). Nevertheless, the OMH determined that, as of November 6–7, 2006, SLS policies required a resident to give thirty days written notice before a resident could leave the facility, and placed additional restrictions on the residents' right to leave. (*Id.* ¶ 83). The 2008 Report noted that SLS had not changed these policies "despite being informed by OMH that they were unlawful." (*Id.* ¶ 86), indicating that these policies were in place prior to OMH's on-site visit.

*Other Violations:* Additionally, the OMH found that SLS violated OMH regu-

---

tiary facts', which are entitled to preclusive effect." *Id.* at 438, 659 N.Y.S.2d 549 (citations omitted). Plaintiffs contend that *Lee* was actually addressing a separate issue: that there can still be identity of issue when the agency applies a different legal standard than the court, where the agency's "discrete factual findings are determinative of the present action." *Id.* Regardless of the merits of this argument, it is difficult to conclude that OMH's determination that the use of manual restraints violated patients' rights should have any preclusive effect, when that charge was annulled by the Appellate Division and, in its

2010 Report, OMH itself dismissed this charge against SLS based on the court's decision.

3. SLS argues that, if collateral estoppel is held to apply, Plaintiffs should be estopped from asserting that SLS used manual restraints on its residents, since the Appellate Division held that this charge was not supported by substantial evidence. This argument fails, since the court's decision was based on OMH's failure to promulgate its policy as a rule, not a lack of evidence.

lations by failing to operate a viable Incident Management Program, and cited specific practices occurring in 2005. (*Id.* ¶ 69). The 2008 Report also notes that, in May 2005, OMH cited SLS for operating its community residence and clinical programs as indistinguishable from one another. (*Id.* ¶ 74).

#### 4. *OMH's Rights*

SLS next argues that there is no identity of issue because the OMH reports "did not establish any rights or interests that might be impaired by a finding before this Court that SLS did not violate patients' rights." *See Ryan,* 62 N.Y.2d at 501, 478 N.Y.S.2d 823, 467 N.E.2d 487 (holding that for an issue to be deemed identical "it must be the point actually to be determined in the second action or proceeding such that a different judgment in the second would destroy or impair rights or interests established by the first.") (internal quotes and citations omitted).

The Appellate Division found that, based on the conduct detailed in the 2008 Report, SLS violated residents' rights under New York law, and OMH was entitled to collect fines. Thus, a contrary decision by this Court would impair OMH's right to collect these fines.

In conclusion, collateral estoppel is appropriate in the present case regarding OMH's determinations and findings on SLS' conduct during the class period. OMH's conclusions concerning the charges upheld by the Appellate Division (SLS' restrictions on residents' right to leave, SLS' lack of an Incident Management Program, and SLS' operation of programs as indistinguishable from one another) will have preclusive effect. OMH's evidentiary findings of fact regarding manual restraints as detailed in the 2008 Report will also have a preclusive effect.

### V. *Plaintiff's Motion for Summary Judgment*

The court will now address whether Plaintiffs are entitled to summary judgment on their claims.

#### 1. *Legal Standard for Summary Judgment*

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the burden of showing that no issue of material fact exists. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has made this showing, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts.... The nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002) (internal quotations and citation omitted). "[C]onclusory allegations" and "unsubstantiated speculation," will not defeat a motion for summary judgment. *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998). In analyzing a summary judgment motion, the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in its favor. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

#### 2. *New York Executive Law section 296*

Plaintiffs' second cause of action alleges that SLS violated New York Executive

Law section 296 "by discriminating against persons with disabilities and targeting such persons, including the plaintiffs, for treatment which violated their rights and the law." [4]

██ To state a claim under section 296, a plaintiff must allege that "(1) he has a disability ... (2) that a person who owns, leases (or leases to), or operates a place of public accommodation discriminated against him, (3) on the basis of his disability." *Detko v. Blimpies Restaurant*, 924 F.Supp. 555, 557 (S.D.N.Y.1996).

SLS does not dispute that Plaintiffs are disabled or that SLS' facilities are a place of public accommodation. Rather, SLS contends that its policies and practices as described in the 2008 Report do not constitute "discrimination" under section 296, since OMH's findings do not show that SLS refused, withheld or denied services to Plaintiffs because of their disability, while at the same time providing those benefits to a group of nondisabled residents.

In turn, Plaintiffs maintain that they were discriminated against because SLS, as a treatment center for patients with psychiatric disorders, specifically targeted persons with disabilities, abused them, violated their legal rights, and thereby profit-

ed. Both parties agree, however, that there is not a single case in which this theory of discrimination, either under the ADA or section 296, was accepted or rejected by a court.

However, in a memorandum decision and order dated October 10, 2007, denying SLS' motion to dismiss, Judge Robinson rejected SLS' argument that its conduct could not constitute "discrimination" because Plaintiffs did not allege a similarly situated group of nondisabled persons that SLS had treated differently. The court noted that discrimination occurs where "an entity targets a protected class for mistreatment because of its protected status." *Romano v. SLS Residential, Inc.*, 246 F.R.D. 432, 441 (S.D.N.Y.2007). While Plaintiffs did not allege that SLS had treated them differently than other groups because of their disability, SLS' conduct could still constitute discrimination since "to hold otherwise would allow defendants who wished to discriminate against persons with disabilities to avoid liability under discrimination statutes as long as they only targeted persons with disabilities." [5] *Id.*

██ Judge Robinson's order, however, was decided in the context of a motion to dismiss. Whether Plaintiffs have estab-

---

4. New York Executive Law § 296(2)(a) provides "2. (a) It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the race, creed, color, national origin, sexual orientation, military status, sex, or disability or marital status of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof ...."

5. In support of this reasoning, the court pointed to *Barkley v. Olympia Mortgage Co.*, No. 04 CV 875(RJD)(KAM), 2007 WL 2437810, 2007 U.S. Dist. LEXIS 61940 (E.D.N.Y. Aug. 22, 2007), which held that a

scheme targeting only minorities for housing sales on unfair terms constituted discrimination under the Fair Housing Act. In *Barkley*, the court held that a plaintiff alleging discrimination may show evidence of "intentional targeting" rather than disparate treatment "because to hold otherwise would allow predatory lending schemes to continue as long as they are exclusively perpetrated upon one racial group." *Id.* at *14, 2007 U.S. Dist. LEXIS 61940, at *45; *see Clement v. United Homes, LLC*, No. 10–CV–2122 (RRM), 2010 WL 4941489, at *1, 2010 U.S. Dist. LEXIS 125943, at *4 (E.D.N.Y.2010) (adopting *Barkley*'s analysis for a claim alleging predatory loan practices targeting minorities).

lished their claim of discrimination as a matter of law is another issue. Although SLS' conduct could constitute discrimination, Plaintiffs have not established that SLS acted with the requisite discriminatory intent. Here, Plaintiffs only argue that "SLS, a residential treatment center, specifically targets mentally disabled people because of their disabilities." The argument that a party acted with discriminatory animus, simply because it operates a facility for the mentally disabled and mistreats them, is too conclusory to meet the standard for summary judgment. *See, e.g., Price v. Mount Sinai Hosp.,* No. 07 Cv. 11318(BSJ)(MHD), 2010 WL 4910218, at *3 (S.D.N.Y. Nov. 23, 2010) ("To establish an inference of discriminatory intent, Plaintiff 'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [her] version of the events is not wholly fanciful.'") (quoting *Golden Pac. Bancorp v. F.D.I.C.,* 375 F.3d 196, 200 (2d Cir.2004)); *Williams v. Alliance Nat'l Inc.,* No. 98 Civ. 7984(RCC), 2001 WL 274107, at *3, 2001 U.S. Dist. LEXIS 2904, at *11 (S.D.N.Y. Mar. 19, 2001), *aff'd,* 24 Fed.Appx. 50 (2d Cir.2001) (holding that a party "must be able to demonstrate admissible evidence sufficient to permit an inference of discriminatory motive").

### 3. *Intentional and Negligent Infliction of Emotional Distress*

Under New York law, for claims for intentional and negligent infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct; (2) a causal connection between the conduct and the injury; and (3) severe emotional distress. *See Stuto v. Fleishman,* 164 F.3d 820, 827 (2d Cir.1999). Additionally, for an intentional infliction of emotional distress claim, a plaintiff must show that the defendant intended to cause, or acted with a "reckless disregard of a sub-stantial probability of causing, severe emotional distress." *Id.* The conduct alleged must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Howell v. N.Y. Post Co.,* 81 N.Y.2d 115, 122, 612 N.E.2d 699, 596 N.Y.S.2d 350 (1993) (quoting *Murphy v. American Home Prods. Corp.,* 58 N.Y.2d 293, 303, 448 N.E.2d 86, 461 N.Y.S.2d 232 (1983)).

While the policies and practices detailed in the 2008 Report could constitute outrageous and extreme conduct, Plaintiffs have not submitted evidence showing that they suffered severe emotional harm. *See, e.g., Armatas v. Maroulleti,* No. 08–CV–310 (SJF)(RER), 2010 WL 4340437, at *19 (E.D.N.Y. Oct. 19, 2010) (holding that an intentional infliction of emotional distress claim failed "[i]n the absence of objective medical evidence of severe emotional distress, or even subjective evidence describing the severe emotional harm"); *Artope v. Ctr. for Animal Care and Control, Inc.,* No. 05 CV 9283(KMW)(RLE), 2009 WL 874037, at *12–13 (S.D.N.Y. Mar. 27, 2009); *Bernat v. Williams,* 81 A.D.3d 679, 679–80, 916 N.Y.S.2d 614 (2d Dep't 2011) (denying summary judgment where plaintiff failed to show that she was caused to suffer extreme emotional distress).

### 4. *Breach of Fiduciary Duty*

For a claim for breach of fiduciary duty, a plaintiff must show "(1) a fiduciary duty existing between the parties; (2) the defendant's breach of that duty; and (3) damages suffered by the plaintiff which were proximately caused by the breach." *Clarendon Nat'l Ins. Co. v. Health Plan Adm'rs,* No. 08 Civ.6279 (GBD), 2009 WL 3053736, at *3, 2009 U.S. Dist. LEXIS

88135, at *12 (S.D.N.Y. Sept. 24, 2009) (internal quotations and citation omitted).

 New York Mental Hygiene Law section 31.19(a) imposed a duty on SLS not to "detain" its residents absent lawful authority. The Appellate Division held that SLS violated this provision because its policies restricted the ability of residents to leave the facilities and the program. While arguably duty and breach exist, Plaintiffs have not demonstrated damages caused by the breach. As such, summary judgment is not appropriate on this issue.

### 5. *Negligent Administration*

 Plaintiffs allege that SLS engaged in negligent hiring, retention, and supervision of staff. Under New York law, a claim for negligent hiring, retention, or supervision, "in addition to the standard elements of negligence," requires "a plaintiff [to] show:

(1) that the tortfeasor and the defendant were in an employee-employer relationship; (2) that the employer "knew or should have known of the employee's propensity for the conduct which caused the injury" prior to the injury's occurrence; and, (3) that the tort was committed on the employer's premises or with the employer's chattels.

*Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir.2004) (quoting *Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 229 A.D.2d 159, 161, 654 N.Y.S.2d 791 (2d Dep't 1997) (internal citations omitted)). Summary judgment on this claim would be premature, as Plaintiffs have not proven that they suffered an underlying tort, since they have not established their discrimination, emotional distress, or breach of fiduciary duty claims as a matter of law.

### VI. *Conclusion*

 In summary, the Court concludes:

1. This Court's jurisdiction is sufficiently established under CAFA, and Defendants have not met their burden to show that any of CAFA's mandatory or discretionary exceptions apply.

2. Under the collateral estoppel doctrine, this Court must give full faith and credit to the determinations of OMH upheld by the Appellate Division as they apply to the relevant class period. OMH's evidentiary findings on the use of manual restraints during the class period will also have preclusive effect.

3. Plaintiffs have not met their burden of proof for summary judgment on any of their five causes of action.

For the foregoing reasons, Plaintiffs' motion for summary judgment is DENIED.

SO ORDERED.