OPINION OF THE COURT
Harold J. Rothwax, J.
The movant herein is a law firm retained by a defendant (William Capparelli) in a pending criminal case. The firm received a Grand Jury subpoena calling for the production of "[a]ny and all audio tape recordings concerning the Tudor Hotel, containing the voices of William Capparelli, Sean McCormack, Eardley Liesching, Peter McCormack or their agents *434 or representatives.”[1] It appears that the defendant may have tape recorded conversations with these men, who subsequently became Grand Jury witnesses, concerning the subject matter of the Grand Jury’s investigation into alleged extortion by the defendant in connection with the renovation of a building known as the Tudor Hotel. This apparently was done at the direction of his former attorney prior to indictment, since the men were also plaintiffs against him in a civil action,[2] for the purpose of generating impeaching statements in the context of that litigation and of any potential subsequent criminal action. The former attorney disclosed the existence of tape recordings at a bail proceeding following the defendant’s arraignment on the indictment. In that proceeding, the attorney represented that a tape recording pertaining to the subject matter of the indictment, the specific contents of which he did not disclose, incriminated the witnesses.
The defendant subsequently retained, and the former attorney surrendered tape recordings to,[3] the firm that is the subject of the subpoena. The firm moved to quash the subpoena on several grounds, including that the subpoena was an abuse of the Grand Jury’s process, called for privileged matter and violated the defendant’s privilege against self-incriminatian. This court previously denied the motion to quash, finding that the People had asserted a proper purpose for the Grand Jury’s subpoena and rejecting the defendant’s claims of privilege. For reasons discussed herein, the court allowed the firm to reargue this motion to quash on the grounds of the client’s privilege against self-incrimination.
The People contend that the firm has failed to establish that the tape recordings were disclosed to the firm as confidential communications within the scope of attorney-client privilege, and that in any event, neither the contents of the tapes nor *435 the act of producing them is entitled to Fifth Amendment protection.
ATTORNEY-CLIENT PRIVILEGE
The issue of the applicability of the attorney-client privilege does not require extensive discussion. The purpose of the attorney-client privilege is to promote full disclosure by the client to the attorney in order to obtain legal assistance. The attorney-client privilege accordingly operates to ensure that the client will not have less protection from compelled disclosure of privileged matters simply by revealing such matters in confidence to an attorney for the purpose of receiving legal advice. Therefore, if preexisting documents would be privileged from compelled disclosure while in the client’s possession, they continue to be privileged from disclosure after transfer to the attorney by the client in order to obtain legal advice. (Fisher v United States, 425 US 391, 403-405 [1976].) The relevant inquiry is twofold: what was the purpose of the revelation of the preexisting tapes by the client to the attorney; and whether the tapes would have been privileged from compelled production had they remained in the client’s possession. (Matter of Vanderbilt [Rosner — Hickey], 57 NY2d 66, 76 [1982].)
This court previously found, in discussing the attorney work product privilege, that the tapes at issue here "were prepared by the defendant at the direction of his former attorney”, for use by the attorney in devising trial strategy in an impending civil suit, and potentially in the context of a criminal case. Therefore, as this court previously ruled, "the tapes were conveyed to counsel [by the defendant] for the purpose of receiving legal advice”. (Matter of Application to Quash, Sup Ct, NY County, Jan. 26, 1993, slip opn, at 5.) The tapes need not have been prepared by an attorney in order to fall within the privilege. The issue is whether they were conveyed to the attorney for the purpose of obtaining legal counsel. (See, Fisher v United States, supra [where the records sought from the respondent’s attorney were accountant’s work papers obtained by the respondent and disclosed to the attorney for the purpose of obtaining legal assistance in an impending tax investigation].) Moreover, neither the fact that other participants to the recorded conversation may be aware of the contents of the tapes, nor that the defendant may have contemplated future disclosure of the contents (see, Matter of Vanderbilt [Rosner — Hickey] supra, 57 NY2d, at 77) destroys the attorney-client privilege.
*436 THE FIFTH AMENDMENT PRIVILEGE
A subpoena duces tecum is a form of compulsion. Therefore, if the person compelled is able to show that the subpoena calls for testimony which would tend to incriminate the respondent, the subpoena should be quashed, absent a grant of immunity coextensive with the privilege against self-incrimination.
In their original papers, the defendant’s attorneys stated that the tapes at issue were made by the defendant, would reveal his subjective knowledge and thought processes, and therefore, were testimonial. This court denied the defendant’s motion to quash the subpoena, considering the defendant’s failure specifically to allege the manner in which compliance with the subpoena would incriminate him, particularly in light of the defendant’s former attorney’s assertion in the bail proceeding that a tape recording in his possession would exculpate the defendant. (Cf., e.g., United States v Doe, 465 US 605, 614, n 13 [1984] [where the respondent did not concede that records sought by the subpoena existed or were in his possession, but argued that production would tacitly admit their existence and his possession, and would serve to authenticate the records, such assertions sufficed to raise the issue of self-incrimination].) Based upon this representation, the People assert that the tapes exist and that their contents may assist the Grand Jury investigating crimes committed by persons other than the defendant.
While the defendant’s burden might not be great under the circumstances,[4] a proponent of a Fifth Amendment privilege against production of relevant evidence must make some showing of potential incrimination. (See, e.g., Matter of Grand Jury Subpoena [Bekins Stor.] 62 NY2d 324, 328 [1984]; United States v Fox, 721 F2d 32, 40 [2d Cir 1983]; United States v Schlansky, 709 F2d 1079, 1084 [6th Cir 1983]; Matter of Grand Jury Empanelled Feb. 14, 1978, 603 F2d 469, 477 [3d Cir 1979].) Considering the importance of the constitutional claim, the court allowed the defendant to make a further submission in support of his assertion of the privilege.
The privilege against self-incrimination does not attach automatically because the items sought are tape recordings, even though the recordings contain incriminating statements
*437 of the person compelled to produce them. (See, e.g., In re Proceedings Before Aug. 6, 1984 Grand Jury, 767 F2d 39 [2d Cir 1985].) Although a tape recording is "clearly testimonial in that it is an aural record of the accused’s communication” (Matter of Vanderbilt [Rosner — Hickey], supra, 57 NY2d, at 79),[5] this does not end the inquiry. The defendant cannot avoid compliance with a subpoena for an item in his possession "merely by asserting that the item of evidence which he is required to produce contains incriminating [statements], whether his own or that of someone else.” (Fisher v United States, supra, 425 US, at 410.) Nor is the fact alone that the defendant may be heard to incriminate himself with his own voice, grounds for invoking the privilege where as here there is no claim that the government compelled the defendant to speak. (Fisher v United States, supra, at 410, n 11; In re Proceedings Before Aug. 6, 1984 Grand Jury, supra, 767 F2d, at 41.) This is true even though the defendant was the author of the tape sought. (In re Proceedings Before Aug. 6, 1984 Grand Jury, supra; United States v Doe, supra, 465 US, at 610-612.)
While there may be certain personal documents, such as diaries, which because of their private nature remain protected from compelled disclosure to the government (Boyd v United States, 116 US 616, 630 [1886]; In re Grand Jury Subpoena Duces Tecum, May 9, 1990, 741 F Supp 1059 [SD NY 1990]; and see, In re Steinberg, 837 F2d 527, 529-530 [1st Cir 1988]; Butcher v Bailey, 753 F2d 465, 469 [6th Cir 1985]; but see, e.g., In re Grand Jury Subpoenas Duces Tecum, June 13 & 22, 1983, 722 F2d 981, 983-985 [2d Cir 1983]), this subpoena is limited to tape recorded statements "concerning the Tudor Hotel”. Whether the recordings are characterized as business records or otherwise, the subpoena does not call for the production of recordings that touch upon the intimate aspects of the defendant’s life. (In re Steinberg, supra, 837 F2d, at 530; Butcher v Bailey, supra, 753 F2d, at 469; In re Proceedings Before Aug. 6, 1984 Grand Jury, supra; and see, United States v Doe, supra, 465 US, at 610-611, n 8; Matter of Vanderbilt [Rosner — Hickey] supra, 57 NY2d, at 78, n 6.) Moreover, insofar as the purpose of the subpoena is to garner evidence of possible wrongdoing by persons other than the defendant (see, *438 Matter of Application to Quash, Sup Ct, NY County, Jan. 26, 1993, supra), it must be limited to tape recordings that contain voices of such other persons and not of the defendant alone.[6] (Cf., Matter of Vanderbilt [Rosner — Hickey], supra, at 78.) Therefore, enforcement of the subpoena will not compel the defendant to reveal his otherwise unexpressed private thoughts.
The defendant[7] is being compelled to produce the items called for in the subpoena, not to answer questions regarding those items. (Cf., e.g., Curcio v United States, 354 US 118, 128 [1957].) This act of production does not compel the defendant to make any oral statement regarding the items. (Fisher v United States, 425 US 391, 396, supra; cf., e.g., United States v Edgerton, 734 F2d 913 [2d Cir 1984].) No testimony by the defendant is being compelled, beyond that which may be implicit in the act of production.
The act of producing evidence in response to a subpoena has communicative aspects of its own, wholly aside from the contents of the items produced. (Fisher v United States, supra, at 410.) By producing the items sought, the respondent implicitly admits that the items exist and were in the respondent’s possession, and may serve to authenticate the items as those described by the subpoena. (Fisher v United States, supra, at 410; and see, e.g., United States v Fox, supra, 721 F2d, at 38-39.) In each case where production of preexisting items is sought, whether a compelled testimonial communication is involved in the act of responding to the subpoena is a question of fact. (Fisher v United States, supra, at 410-411.) In his supplemental reply brief, the defendant for the first time asserts that the subpoena calls for items that he never conceded exist, and that revelation of the existence of tapes of a kind called for would tend to incriminate him by "evidencing a consciousness of guilt”, noting the People’s argument to that effect in the bail proceeding.[8]
*439 The court finds the defendant’s assertion of potential incrimination adequate. (United States v Doe, supra, 465 US 605, 614, n 13.) Given the nature of the item sought — any tape recorded statement of the defendant or of those whom he is accused of extorting, concerning the topic of the alleged extortion — the defendant’s admission of its existence could very well form a link in the chain of evidence establishing the crimes charged in the indictment. (See, e.g., Butcher v Bailey, supra, 753 F2d, at 470; In re Kave, 760 F2d 343, 358 [1st Cir 1985].) Similarly, defendant’s possession of tapes of statements by the victims discussing the subject matter of the extortion could support an inference of consciousness of guilt, by corroborating defendant’s involvement with the victims in relation to the subject matter of the extortion. (See, e.g., United States Sec. & Exch. Commn. v First Jersey Sec., 843 F2d 74, 77 [2d Cir 1988] [respondent’s possession of business records alleged to be part of effort to obstruct justice]; In re Grand Jury Subpoenas Duces Tecum, June 13 & 22, 1983, supra, 722 F2d, at 983-985.) Finally, the defendant’s production of the tapes sought, insofar as they reflect that they were made by the defendant and contain his own statements, may implicitly authenticate the tapes and so provide a further link in the chain of incrimination. (See, Fisher v United States, supra, 425 US, at 412-413, n 12; Matter of Vanderbilt [Rosner — Hickey], supra, 57 NY2d, at 79; United States v Fox, 721 F2d 32, 38-39, supra; Butcher v Bailey, supra, 753 F2d, at 469; In re Kave, supra, 760 F2d, at 358; People v Defore, 242 NY 13, 27 [1926].)
However, an act of production does not "[rise] to the level of testimony within the protection of the Fifth Amendment” where "[t]he existence and location of the [items] are a foregone conclusion and the [respondent] adds little or nothing to the sum total of the Government’s information by conceding that he in fact has the [items].” (Fisher v United States, supra, at 411.) The Court in Fisher noted, by way of example, that the defendant who provides a handwriting exemplar "admits his ability to write and impliedly asserts that the exemplar is his writing. But in common experience, the first would be a near truism and the latter self-evident. In any event, although the exemplar may be incriminating to the accused and although he is compelled to furnish it, his Fifth Amendment privilege is not violated because nothing he has said or done is deemed to be sufficiently testimonial for purposes of the privilege” (supra, at 411). Similarly, where the defendant’s act of responding to the subpoena does not contribute to the *440 government’s knowledge about the statements of fact implicit in the act, it is not sufficiently testimonial to require Fifth Amendment protection.
In this "foregone conclusion” analysis, the government bears the burden to show that the existence and location of the items sought are known, apart from any response to the subpoena. Moreover, the government must be able to authenticate the items produced without reference to the respondent’s production. (See, United States v Doe, supra, 465 US, at 614, n 13; United States v Rue, 819 F2d 1488, 1493, n 4 [8th Cir 1987]; Butcher v Bailey, supra, 753 F2d, at 469.) This burden has been described as a showing by the government that "it would be able to prove at trial by independent evidence any possibly incriminatory facts” to which a respondent might implicitly testify by complying with the subpoena. (In re Sealed Case, 832 F2d 1268, 1280 [DC Cir 1987].)
It appears from the history of these proceedings that the sum total of the People’s knowledge about the tapes consists of the representations made by defendant’s previous counsel during the bail application.[9] During that proceeding, the defendant’s former counsel indirectly admitted that at least one tape existed and was in counsel’s possession. Such an admission (see, People v Rivera, 58 AD2d 147, 149 [1st Dept 1977], affd 45 NY2d 989) suffices, apart from any act of the defendant in complying with the subpoena, to establish the existence and possession of the tape. (See, e.g., United States v Freidus, 135 FED 52, 58 [SD NY 1991]; United States v Rue, supra, 819 F2d, at 1494; see also, Fisher v United States, supra, 425 US, at 430, n 9 [Brennan, J., concurring]; In re Sealed Case, supra, 832 F2d, at 1280.)
The relevant portion of counsel’s statement was that: "There’s incontrovertible proof of their [the victims] extortionate demands for the payment of money as a price for withdrawing claims against this defendant; that they have asked for enormous sums of money and extorted Mr Capparelli on two occasions * * * As you know, in this particular case we will present very strong proof that moneys paid by Mr McCormack to Mr Capparelli were paid voluntarily and Mr McCormack and son made claims that they would elevate those *441 claims into extortionate payments unless he paid enormous sums to him [sic]; that, in fact, the extortionate demands were not made by Mr Capparelli but by the McCormacks. To play something at this time would be perhaps inappropriate to the defense.”
The more difficult issue, and "the prevailing justification for the Fifth Amendment’s application” to subpoenas of this nature, is the implicit assurance by the act of production, that the items produced are the ones demanded. (Fisher v United States, 425 US 391, 412, n 12.) Here the items sought are described in the subpoena as "[a]ny and all audio tape recordings concerning the Tudor Hotel, containing the voices of William Capparelli, Sean McCormack, Eardley Liesching, Peter McCormack or their agents or representatives.” It is apparent from the breadth of this subpoena that the Grand Jury is unable to identify specific recordings in the defendant’s possession. (See, United States v Doe, supra, at 613-614, n 12; United States v Fox, supra, 721 F2d, at 38.) In order to avoid compelling an act of testimonial significance from the defendant by having him identify tapes in his possession that would conform to the terms of the subpoena, the subpoena must be limited to such recording as can be authenticated apart from the act of production. The burden is on the People to show that such alternative means of authentication exist and can be identified apart from the defendant’s act of producing the tapes. (See, e.g., United States v Rue, supra, 819 F2d, at 1494; United States Sec. & Exch. Commn. v First Jersey Sec., supra, 843 F2d, at 76; United States v Schlansky, 709 F2d 1079, 1083, supra.)
In this context, authentication relates to the content of the conversation and the identity of the speakers. Where persons other than the defendant participated in the conversation and can attest to the identity of the speakers and the accuracy of the contents, and assuming the ability of an expert witness after analysis of the tape to testify that there has been no tampering or alteration, no reference need be made to the defendant’s act of production to authenticate the tape recording. (People v Ely, 68 NY2d 520, 527.)
Defendant’s counsel in the bail proceeding effectively identified persons other than the defendant who could attest to the accuracy of the recorded conversation admittedly in the attorney’s possession. Moreover, by describing the content of the conversation in a general way (see, United States v Rue, supra, 819 F2d, at 1494), the attorney provided the means by which *442 the defendant can respond to the subpoena by expressing his belief that the tape produced is the tape sought, without having to restate or affirm the content of the tape. (Fisher v United States, supra, at 410-411.) Accepting defense counsel’s representation that a tape exists in which the McCormacks made the statements attributed to them, the McCormacks would be able to affirm that they made such statements and that the recording accurately depicts the statements that they made. (People v Ely, supra.)
Accordingly, the subpoena will be enforced, limited to the production of any tape recording which contains statements relating to the Tudor Hotel that constitute (1) extortionate demands by Sean McCormack and/or Peter McCormack for the payment of money as a price for withdrawing claims against William Capparelli; (2) demands by Sean McCormack and/or Peter McCormack for payment of sums of money by William Capparelli to the McCormacks; (3) statements by Sean McCormack and/or Peter McCormack that moneys paid by the McCormacks to Mr. Capparelli were paid voluntarily; (4) claims by Sean McCormack and/or Peter McCormack that they would elevate claims against William Capparelli into extortionate demands for payment unless William Capparelli paid money to them.

. In a previous opinion (Matter of Application to Quash, Sup Ct, NY County, Jan. 26, 1993) the court described these as "tape recordings in the firm’s possession containing conversations between the firm’s client and three men who were witnesses before the grand jury that indicted the defendant.” As the firm points out, this description, derived from the People’s papers in response to the motion, is in fact narrower than the subpoena itself.

. There is some dispute as to whether the tapes were made before the civil action commenced, or while it was pending.

. That the former attorney surrendered tape recordings to the firm is established by a transmittal letter referring to audio tapes, a copy of which was furnished to the People by the former attorney. The transmittal letter does not otherwise identify or describe the tapes.

. The circumstances are that the defendant has been indicted by the Grand Jury seeking the tapes, for crimes arising out of the subject matter of the conversations believed to be contained in the tapes.

. By this statement, the Court in Vanderbilt (supra) meant to distinguish tape recordings from voice exemplars, and other similar evidence which has been held to be nontestimonial. (See, Matter of Vanderbilt [Rosner — Hickey], 57 NY2d, at 78, n 7.)

. Whether a tape recording made by the defendant in private containing only the defendant’s own thoughts recorded in his own voice would be subject to a subpoena duces tecum is an issue that the court need not resolve upon the facts of this case. (Cf., e.g., Matter of Vanderbilt [Rosner— Hickey], 57 NY2d 66, 78-79 [1982], supra.)

. Although the law firm is called upon to produce the tapes, the firm stands in the defendant’s stead for purposes of this analysis.

. The People during the bail proceeding of September 25, 1992, referred to tape recordings seized from the defendant’s home during the execution of a search warrant. The People noted that the defendant had made tape recordings of the victims of the alleged extortion and of other "witnesses who he thought would come to their aid.”

. The People properly do not rely upon the tapes seized pursuant to the search warrant. The existence of other similar tapes in the defendant’s possession on a prior occasion does not assist the People in meeting their burden of proof that the tapes sought under the subpoena also exist and are in the defendant’s possession. (See, Maggio v Zeitz, 333 US 56, 65 [1948].)