**Nicholas J. ROMANO and Deborah Morgan, Plaintiffs and Plaintiff Class Representatives,**

v.

**SLS RESIDENTIAL INC., SLS Health Inc., SLS Wellness Inc., Supervised Lifestyles Inc., Joseph Santoro, Alfred Bergman, Shawn Prichard, Matt Sena, Robert Giordano, Gabe Caputo, Robert Delitis and John Doe I, Defendants.**

**No. 07 Civ. 2034 (MHD).**

United States District Court, S.D. New York.

Signed Feb. 11, 2014.

Filed Feb. 14, 2014.

---

66. Hapoalim Mem. at 20.

67. *Id.*

71. Local Civil Rule 30.1.

See also 246 F.R.D. 432.

Michael Howard Sussman, Christopher Dale Watkins, Sussman & Watkins, Goshen, NY, for Plaintiffs.

Margaret Joann Babb, Malcolm J. Harkins, III, James F. Segroves, Proskauer Rose LLP, Washington, DC, Paul F. Callan, Marc Robert Wilner, Callan, Koster, Brady & Brennan LLP, New York, NY, Richard Wolfe Cohen, Gerald Lawrence, Lowey Dannenberg Cohen & Hart, P.C., White Plains, NY, for Defendants.

---

1. SLS has since lost its three New York State operating certificates.

2. The original complaint also asserted federal claims under Title III of the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.,* and

*MEMORANDUM & ORDER*

MICHAEL H. DOLINGER, United States Magistrate Judge:

Plaintiffs, on behalf of a class of psychiatric patients, have sued a number of individuals and entities (collectively "SLS") that are associated with two in-patient treatment facilities and one out-patient facility.[1] Plaintiffs press a variety of state-law claims based on alleged mistreatment while they were patients at the facility.[2] The pertinent time period for the certified class runs from July 2004 to May 31, 2006. *Id.* at 447.

Currently the parties are at loggerheads over the production of several categories of documents sought by plaintiffs' counsel. The principal dispute, as articulated by plaintiffs, is triggered by their request for production of the transcripts and exhibits generated by two sets of administrative hearings conducted by the New York State Office of Mental Health ("OMH") in 2007 and 2009, respectively. At those hearings OMH examined the performance by defendants of their professional responsibilities during a multi-year period ending in 2008. (Sept. 11, 2013 Tr. 2–4; Pls.' Mem. of L. in Supp. of Mot. to Compel, dated Sept. 16, 2013 (Dkt. No. 122) ("Pls.' Mem.") at 1; Aff. of Christopher D. Watkins, Esq., dated Sept. 16, 2013 (Dkt. No. 121) ("Watkins Aff.") at Exs. 1 & 2). Those hearings culminated in two sets of findings of gross professional misconduct—rulings largely upheld on Article 78 review by the Appellate Division—and those findings led ultimately both to fines and then later to the revocation of the operating certificates of the corporate entities. *See In re SLS Residential, Inc. v. New York State Office of Mental Health,* 67 A.D.3d 813, 889 N.Y.S.2d 84 (2d Dep't 2009); *In re SLS Residential, Inc. v. New York State Office of Mental Health,* 89 A.D.3d 951, 933 N.Y.S.2d 318 (2d Dep't 2011).

SLS has resisted production, arguing that it is precluded by a state-court sealing order

the Rehabilitation Act, 42 U.S.C. § 504, but both of these claims were dismissed by the District Court in 2007. *Romano v. SLS Residential, Inc.,* 246 F.R.D. 432, 439–40 (S.D.N.Y.2007).

that covered the record generated by the agency hearings. (Defs.' Mem. of L. in Opp'n to Mot. to Compel, dated Sept. 26, 2013 (Dkt. No. 126) ("Defs.' Opp'n") at 5–15). Defendants also cite the policies embodied in various related state-law privilege and statutory protections for mental-health treatment information. (*Id.* at 8–12).

In response to defendants' argument, plaintiffs assert that the sealing order covers only the court files and not copies of the documents in the possession of the defendants. (Pls.' Reply Mem. in Further Supp. of Mot. to Compel, dated Oct. 4, 2013 (Dkt. No. 127) ("Pls.' Reply") at 4–5). They further argue that the sealing order should not preclude production of records that belong to SLS and were created in the ordinary course of its business, even if copies of them ultimately ended up as hearing exhibits as well. (Pls.' Mem. 4–5; Pls.' Reply 4–5).

As for what documents are in controversy, the record is somewhat unclear. It bears noting in this respect that the record before us contains lists of exhibits for both the 2007 and the 2009 hearings. (*See* Watkins Aff. Ex. 1 at 4–10 & Ex. 2 at appendices B–D). Some of these items appear to embody portions of treatment records of a few patients, although we do not know whether some or any of them are members of the class[3]; others seem to be internal memoranda of the defendants and others are apparently policy documents. Apart from seeking the complete administrative record, plaintiffs have sought SLS documents reflecting institutional policies during the class period, whether or not they are part of that OMH record. (Sept. 11, 2013 Tr. at 15, 17; Pls.' Mem. 3–4; Pls. Reply 1–3). In addition, in post-motion correspondence with the court, plaintiffs' counsel seem as well to be asking for the treatment records of the plaintiffs even if those documents are not part of the administrative record. (Watkins Jan. 17, 2017 letter to the Court at 2–3).

Defendants appear to argue that they are bound by the sealing order to withhold their own copies of at least some documents, although what has been withheld is also somewhat obscure. As for the requested policy documents, defendants insist that they have provided copies of those policies (Defs.' Opp'n 2–4; Callan Oct. 3, 2013 letter to the Court; Sept. 11, 2013 Tr. 17–19), even though plaintiffs assert that the documents turned over seem to postdate the class period and do not include the policy documents from the pertinent era. (*Id.* at 15–17; Pls.' Reply 1–3).

## ANALYSIS

At the outset we address the effect of the state-court sealing order on discovery in this case and the status of defendants' apparent invocation of—or at least allusion to—pertinent patient privileges and related statutory protections. We then specify what production is required from the defendants in light of that analysis. Finally, we address the policy-document imbroglio.[4]

### A. *The Applicable Law*

As noted, the only remaining claims in this case arise under state law. Thus, to the extent that defendants may be asserting what amounts to an evidentiary privilege, we must look to state law. Fed.R.Evid. 501. *See, e.g., Dixon v. 80 Pine Street Corp.*, 516 F.2d 1278, 1280 (2d Cir.1975); *In re MTBE Prods. Liab. Litig.*, 898 F.Supp.2d 603, 606 (S.D.N.Y.2012); *Primetime 24 Joint Venture v. Echostar Communications. Corp.*, 2000 WL 97680, at *1 n. 1 (S.D.N.Y. Jan. 28, 2000). As for the effect of a state sealing order on the scope of discovery, we assume for present purposes that we are to honor its terms, but with the understanding that First Amendment considerations are properly taken into account in construing such an order. *See, e.g., Newsday LLC v. County of Nassau*, 730 F.3d 156, 163 (2d Cir.2013); *see also Holmes v. Winter*, 110 A.D.3d 134, 138–39,

---

3. The identities of the patients referred to in the two reports of the hearing officer were masked by the use of their initials. (Watkins Aff. Exs. 1 & 2).

4. We have notified OMH and the Office of the State Attorney General of the pending motion and invited them to respond if they are interested before we render our decision. (Order, dated Nov. 12, 2013 (Dkt. No. 131)). We have received no response from either office.

970 N.Y.S.2d 766, 769–70 (1st Dep't 2013), *reversed on other grounds*, 22 N.Y.3d 300, 980 N.Y.S.2d 357, 3 N.E.3d 694 (2013). Moreover, we emphasize that—exclusive of any underlying privilege that the sealing order may embody—the federal courts still operate under the aegis of the Federal Rules of Civil Procedure, which govern the scope and nature of available discovery, although we of course give deference to relevant state-law policies.

### B. *The Relevant Procedural History*

We start by summarizing as much of the specific historical context of the sealing order entered in the state case as we can find. We then consider the precise wording of the sealing order and its most reasonable construction.

In November 2006 OMH found SLS to be in violation of a number of regulations governing the treatment of psychiatric patients, and it imposed fines totaling $110,000.00 for those violations.[5] SLS appealed that decision administratively, and OMH therefore conducted an extended hearing on the issue in 2007. That inquiry led to a decision by a hearing officer, issued April 17, 2008, which upheld the charged violations and corresponding fines. *In re SLS Residential, Inc.*, 67 A.D.3d at 814, 889 N.Y.S.2d at 85–86. In August 2008—after the filing of this 2007 lawsuit—OMH found continuing and additional violations by SLS and ordered revocation of its operating certificates. SLS appealed again, and a further set of hearings ensued, with the result that, by report dated July 30, 2010, the same hearing officer upheld those findings and the revocation of the certificates. (*Id.* Ex. B).

SLS first sought judicial review of OMH's 2008 decision by an Article 78 petition. Although the State Supreme Court initially denied enforcement and determined to award damages to SLS, on appeal the Appellate Division reversed and largely upheld the challenged findings and decision of OMH, declining to enforce only $10,000.00 of the $110,000.00 fine imposed by OMH. *In re SLS Residential, Inc.*, 67 A.D.3d at 814–17, 889 N.Y.S.2d at 85–88. SLS subsequently sought similar review of the 2010 findings and decision of OMH, and the Appellate Division upheld OMH's decision, including the revocation of defendants' operating certificates. *In re SLS Residential, Inc.*, 89 A.D.3d at 951–53, 933 N.Y.S.2d at 319–20.

There is no indication in the record as to whether and to what extent the agency record was sealed during the first round of administrative proceedings, though we infer that at least some portions of the record were sealed.[6] Nor is there any indication of a sealing order when the first Article 78 petition was pending in the State Supreme Court. Rather, when OMH filed its appeal in the Appellate Division, it requested that the appellate court order the entire record sealed, but that court denied this request and ordered only that the record be redacted to eliminate public disclosure of the names or other identifying information belonging to the SLS patients. (*See* Decl. of Paul F. Callan, dated Sept. 26, 2013 (Dkt. No. 125) ("Callan Decl.") Ex. A at 2).

Subsequently SLS moved in the State Supreme Court, Putnam County, for an order "sealing records containing the transcripts and exhibits introduced in [the several proceedings engaged in by these parties] so as to protect the personal privacy, confidentiality and identity of patient clinical record[s] and information." (*Id.* Ex. A at 1). At that stage, OMH—represented by the New York State Attorney General—chose not to oppose the application, with the caveat that it and SLS could use those records "in any other action or proceeding". (*Id.* Ex. A at 1–2). By decision dated April 13, 2010, the court (Francis A. Nikolai, S.C.J.) granted the requested sealing order "subject to the provisions set forth herein", which included the

---

**5.** Plaintiffs' amended complaint refers to those findings and recites that the pertinent OMH document is attached (2d Am.Compl. ¶ 31), but in fact the pleading in the court file includes no such attachment.

**6.** As defendants note, disclosure during an OMH hearing of evidence relating to the identity, condition or clinical record of a patient will trigger sealing of that record at the agency level. (Defs.' Opp'n 11 (quoting 14 N.Y.C.R.R. § 503.4(h)(3)(v))).

specification that the order was "without prejudice to (a) the use of the records by OMH and SLS themselves in any other action or proceeding; and (b) any application by another person for relief from the sealing order upon a showing of good cause." (*Id.* Ex. A at 2). The court also specified that if the sealing order were vacated, "additional redaction or confidentiality stipulation[s] should be employed to protect individuals' important privacy interests." (*Id.*). Although not stated explicitly, that sealing order is governed by 22 N.Y.C.R.R. § 216.1, which specifies the legal standard for "sealing the court records".[7]

Plaintiffs filed this lawsuit in 2007, while the first administrative proceeding was pending. Their complaint, as amended, encompasses claims of misconduct that parallel the accusations that OMH made in the two agency hearings, but also includes other claims of wrongful conduct. (2d Am.Compl. ¶¶ 22–55). Following class certification, *see Romano*, 246 F.R.D. at 444–46, plaintiffs moved for partial summary judgment, and in a decision issued on June 20, 2011, Judge Duffy held that the findings of OMH concerning violations by SLS—insofar as upheld by the Appellate Division—will have preclusive effect in this case. *Romano v. SLS Residential, Inc.*, 812 F.Supp.2d 282, 289–92 (S.D.N.Y. 2011). In so ruling, however, Judge Duffy implicitly acknowledged that collateral estoppel would not apply to OMH findings that concerned events postdating the class period. *See id.* at 291–92.[8]

We are told by counsel—although there seems to be no record of the proceeding—that at some point class counsel here asked Judge Duffy to unseal the records from the state administrative proceedings, that is, in effect to vacate Judge Nikolai's sealing order. According to counsel, Judge Duffy instead directed plaintiffs in the first instance to apply for such relief in state court. (*See* Sept. 11, 2013 Tr. at 3; Pls.' Mem. 3).

Plaintiffs made such a request by motion, apparently filed February 1, 2012, and in a decision and order dated April 17, 2012 Justice Nikolai denied the application. (Watkins Aff. Ex. 5). In so ruling, the judge applied the "good cause" criterion embodied in his original sealing order for assessing applications by nonparties to unseal the court records embodying the OMH administrative record. In doing so, the judge noted Judge Duffy's collateral-estoppel decision from the prior year, holding that the OMH findings and decisions were preclusive in the federal case, and he observed that "there is no claim that any of those Orders, Determinations or underlying findings are unavailable to movant." (*Id.* Ex. 5 at 3). The judge then went further, referring to the fact that the record before the Appellate Division—which apparently included a large portion of the agency transcripts and exhibits—had not been sealed, but only redacted. On that basis, he observed that "[p]ivotally, movant has not sufficiently demonstrated here that he seeks records beyond those available in the redacted, but unsealed record on appeal, which admittedly contains '3,500 pages of transcript, plus briefs and supplemental records.' Nor has movant explained that records beyond those available in the appellate record are necessary to fully advance the claims of issue preclusion already identified by the federal court, since the Appellate Division's rulings entitled to preclusive effect were neces-

---

7. Although not explicitly addressed by the litigants, we are advised that following the filing by SLS of the second Article 78 petition in the Second Department, that court granted a motion by SLS to seal the administrative record from the second set of OMH hearings and later denied a motion by an unrelated litigant (not a patient) to unseal the record. (*See* Oct. 3, 2 013 Callan letter to the Court Ex. A at 11) (citing 2011 N.Y. Slip Op. 61058, (U); 2012 N.Y. Slip Op. 84461(U)). Defendants have not sought to invoke this sealing order on the current motion; indeed, their motion papers do not mention it and they have not even proffered a copy of either

Appellate Division order cited in the brief attached to their attorney's post-briefing correspondence with the court.

8. The first OMH report did not clearly delineate the time period covered but seemed to be based in part on events occurring in 2005 and the first part of 2006, within the class period. (Watkins Aff. Ex. 1 at 16–17, 20–29 (semble), 32–33, 35–37). The second report, however, specified that the charged violations covered the period from November 2006 to August 29, 2008 (*id.* Ex. 2 at 1), an interval that is beyond the class period.

sarily based upon information contained within that record." (*Id.*).[9]

Justice Nikolai then went on to note the privacy concerns cited by SLS in defense of the sealing order, including statutory privileges, sections 33.13 and 33.16 of the Mental Health Law and the Federal Health Insurance and Portability and Accountability Act ("HIPAA"), 42 U.S.C. §§ 1320d–1320d–9. (Watkins Aff. Ex. 5 at 3–4 & n. 1). Although plaintiffs argued that SLS could not assert a privilege belonging to patients, the court noted that the articulated privacy concerns "are significant." (*Id.* Ex. 5 at 4). Moreover, the judge recited that plaintiffs or class members in this federal lawsuit could obtain their own medical records by executing authorizations, and that plaintiffs had not shown good cause to obtain the treatment records of patients who were not class members. (*Id.* Ex. 5 at 4–5).[10] In response to plaintiffs' further argument that denial of access to the sealed records would unfairly prejudice them because under the sealing order SLS was allowed to use these records in this federal case, the judge observed that records of patients not party to the federal lawsuit would presumably not be relevant and that, as for relevant records, they would presumably not be admissible in this federal lawsuit when offered by SLS unless plaintiffs also had access to them. (*Id.* Ex. 5 at 5–6).

9. Although the parties have never clarified why Justice Nikolai referred to only a portion of the pertinent administrative transcripts as lodged in the Appellate Division, a review of the brief of the State Attorney General filed in opposition to the unsealing motion by an unrelated litigant (the family of a murder victim allegedly killed by an SLS patient) demonstrates that the transcripts that Justice Nikolai referred to were those from the first set of administrative hearings. As noted, the filing of the transcripts from the second set of hearings was apparently followed by a sealing order in the Appellate Division. (*See* Callan Oct. 3, 2013 letter Ex. A at 11).

10. In citing these privacy orders, Justice Nikolai observed, incorrectly, that if medical records were released to plaintiffs' counsel, all class members could see all of the treatment records of all of the other patients. (*Id.* Ex. 5 at 5 n. 3). This observation did not take account of the fact that the court may impose a confidentiality order limiting access to those records to counsel and perhaps expert witnesses and also place restrictions on their use and disclosure at trial. *See* CPLR § 3103(a); Fed.R.Civ.P. 26(c); *see also,*

We are also advised by plaintiffs' counsel that, consistent with Justice Nikolai's directive, they made an attempt to procure from the Appellate Division the transcripts and exhibits alluded to by Justice Nikolai, but were unable to do so. (Sept. 11, 2013 Tr. 3–4).[11] The exact reason for that failure is not clearly delineated before us, although it is likely that plaintiffs were rebuffed because the files pertaining to the SLS appeals either were no longer in the court's custody or else were being treated as sealed. In any event, the assumption by Justice Nikolai that the records were physically available from the Second Department proved to have been unfounded.

## C. The Scope of the Sealing Order [12]

■ In view of the history that we have described, we may fairly infer the limited scope of the sealing order. First, based on the rulings of Justice Nikolai—the author of the sealing order—it does not apply to whatever was filed with the Appellate Division on the first Article 78 proceeding, including administrative transcripts and exhibits from the first set of agency hearings. As noted, the Appellate Division itself had refused to seal that appellate record, although it approved the redaction of patient identifiers for filing with the court.[13]

*e.g.,* *Daniels v. City of New York,* 2014 WL 325934, at *2 (S.D.N.Y. Jan. 27, 2014); *Kunstler v. City of New York,* 2006 WL 2516625, at *11 (S.D.N.Y. Aug. 29, 2006) (citing cases).

11. There is no suggestion that plaintiffs appealed the decision of Justice Nikolai denying their unsealing motion.

12. As we have noted, the defendants do not mention, much less rely upon, a sealing order that the Appellate Division reportedly entered covering the administrative record of the second set of OMH hearings. Having not even been provided a copy of that order, we do not address it here other than to note that it presumably too does not purport to enable SLS to withhold pre-existing business records or, indeed, any other pertinent documents from the very patients in whose interests the order was undoubtedly entered.

13. We note that the New York Court of Appeals has a rule that provides that any materials that are subject to a sealing order by another court is to be filed under seal on an appeal to the Court

Second, the Supreme Court sealing order does not apply to the business records of SLS, even if those records ultimately also ended up as exhibits in the OMH hearings. *See generally Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) (attorney-client privilege does not extend to otherwise unprivileged business records merely because they were then turned over to counsel); *In re Application to Quash Grand Jury Subpoena Duces Tecum,* 157 Misc.2d 432, 435, 597 N.Y.S.2d 557, 559 (Sup. Ct.N.Y.Cty.1993); *Matter of Bekins Storage Co.,* 118 Misc.2d 173, 180, 460 N.Y.S.2d 684, 691 (Sup.Ct.N.Y.Cty.1983) (citing *Jones v. Reilly,* 12 Bedell 97, 105, 66 N.E. 649 (1903)), *mod. on other grounds,* 94 A.D.2d 643, 463 N.Y.S.2d 349 (1st Dep't 1983), *aff'd,* 62 N.Y.2d 324, 476 N.Y.S.2d 806, 465 N.E.2d 345 (1984). *See also Matter of Vanderbilt,* 57 N.Y.2d 66, 76, 453 N.Y.S.2d 662, 668, 439 N.E.2d 378 (1982) (test of privilege is whether document was protected when in the client's possession, not attorney's).

Third, we note Justice Nikolai's invocation of the potential burden on the clerk of the court if he were required to redact documents in the file of the court for production. (Watkins Aff. Ex. 5 at 4 n. 2). Plainly, the judge was assuming that the plaintiffs' request was for public release of documents physically in the files of the court and not discovery of copies of documents held by defendants, since in that case the burden would have been borne by the litigants, not court personnel. Indeed, this is entirely consistent with the pertinent New York court rule governing sealing orders, which specifies that the authority to seal—as exercised by Justice Nikolai—encompasses the sealing of "the court records", and further provides that such a sealing order must be based on a finding of good cause. 22 N.Y.C.R.R. § 216.1(a). *See, e.g., Holmes,* 110 A.D.3d at 138–39, 970 N.Y.S.2d at 770. Moreover, the evident purpose of such an order is to limit public access to those records, rather than to provide a shield to a litigant to frustrate

otherwise relevant discovery. *See, e.g., In re East 51st Street Crane Collapse Litig.,* 106 A.D.3d 473, 474, 966 N.Y.S.2d 373, 374–75 (1st Dep't 2013) ("The rule also requires courts to consider the interest of the public as well as the parties in determining whether good cause has been shown. In this regard, '[t]he presumption of the benefit of public access to court proceedings takes precedence, and sealing of court papers is permitted only to serve compelling objectives, such as when the need for secrecy outweighs the public's right of access . . . .' ") (quoting *Applehead Pictures LLC v. Perelman,* 80 A.D.3d 181, 191–92, 913 N.Y.S.2d 165, 173–74 (1st Dep't 2010)).

Fourth, the provision in the sealing order allowing use of the sealed records by both OMH and SLS "in any other action or proceeding" is not, as SLS argues, limited to litigation between them. (*See* Defs.' Opp'n 14–15). Indeed, the wording of the order is clear and unambiguous. Moreover, if defendants' reading were correct, Justice Nikolai would presumably have rejected plaintiffs' prejudice argument on that basis, since SLS would be barred by the sealing order from using these sealed materials in the federal litigation. The judge did not do so, however, and instead observed that if SLS attempted to use these documents in the federal case, it would presumably be precluded from doing so by this court unless plaintiffs also had access to them.

## D. *The Impact of the Sealing Order*

In view of the foregoing, we conclude that Justice Nikolai's sealing order does not have the broad effect that defendants attribute to it. At the very least, it does not preclude discovery by plaintiffs in this case of the business records (including records of treatment or documents alluding to interactions with patients) of the defendants merely because some of those records were used as exhibits in the OMH administrative proceeding.[14]

---

of Appeals. 22 N.Y.C.R.R. § 500.5(b). *See In re SLS Residential, Inc. v. New York State Office of Mental Health,* 14 N.Y.3d 912, 904 N.Y.S.2d 690, 930 N.E.2d 763 (2010). The Appellate Division, however, has no such provision in its rules. *See*

App. Div.2d Dep't Local Rules, available at *www. nycourts.gov/courts/ad2/pdf/rulesofprocedure.pdf.*

**14.** Defendants are less than clear as to whether, based on the sealing order, they are withholding

██ That said, we note that defendants appear to be representing (or at least implying), through counsel, that they have not themselves retained the business records that became exhibits in the OMH proceeding. (Sept. 11, 2013 Tr. 4–6 (referring to correspondence with SLS state-court counsel)). Although a party is not required to produce records over which it lacks any custody or control, *see, e.g., Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007), there is less to this potential problem than meets the eye. First, there is nothing in the record before us to demonstrate that defendants simply do not have copies of the documents in question. Second, defendants have conceded that the attorney for SLS in the OMH hearings and subsequent court proceedings—David Trueman, Esq.—has copies of those documents. Indeed, that fact is reflected in letters sent by Mr. Trueman to defendants' federal-court counsel during the course of recent discovery proceedings. (Watkins Aff. Exs. 12–13; Sept. 11, 2013 Tr. 4–6). Since those documents are in the custody of defendants' attorney, they are within the control of the client, and hence can be reached by a court order under Rule 37(a). *E.g., Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn, LLP*, 91 N.Y.2d 30, 34–37, 666 N.Y.S.2d 985, 987–89, 689 N.E.2d 879 (1997). *See Shcherbakovskiy*, 490 F.3d at 138 (question is whether litigant has "access and the practical ability to possess documents"). *Cf. In re NASDAQ Market–Makers Antitrust Litig.*, 169 F.R.D. 493, 530–32 (S.D.N.Y.1996).[15]

Our analysis also leads to the conclusion that the sealing order does not itself bar disclosure of agency transcripts and exhibits that were filed with the Appellate Division. According to Justice Nikolai, plaintiffs were free to retrieve copies from the files of the appellate court, and the fact that they were unavailable there does not excuse defendants from making their copies of those documents

available for review. Moreover, since the sealing order permits SLS to use the sealed documents in any other case (presumably with appropriate limitations on distribution), that order does not itself bar discovery of those documents by plaintiffs' counsel.

### E. *The Scope of Permissible Discovery*

The next issue is the proper scope of a discovery order in this context. There is no question as to the potential relevance of the documents at issue, as defendants themselves announced in their Rule 26(a) initial disclosure that the record from the administrative proceeding was relevant to this case. (Watkins Aff. Ex. 3). Although defendants have since amended that disclosure, they have candidly conceded that the reason for doing so was not reconsideration of relevancy, but rather the entry of the state court sealing order. (Sept. 11, 2013 Tr. 4–5, 9; Defs.' Opp'n 5–13). Thus the only pertinent factors that might limit a discovery order here must emerge from privilege rules and the policy considerations that defendants have cited.

██ On this topic we start with the premise that the invocation of a privilege must be made by the party resisting discovery and must be supported by competent evidence of the facts underlying that privilege claim. *E.g., United States v. Constr. Prods. Research, Inc.* 73 F.3d 464, 473 (2d Cir.1996). Defendants here—even assuming that they have standing to invoke privilege on behalf of the patients formerly in their care—have failed to meet their initial burden. They have apparently not served a privilege log, as required in the Second Circuit, *see, e.g., id.*, and have offered no proffer of competent evidence demonstrating any of the facts necessary to invoke a privilege. Indeed, all they have done is to cite the sealing order, which, for reasons noted, we find inadequate to immunize defendants' records.[16]

---

at least some pre-existing records that became exhibits, and, if so, which they are refusing to produce. We infer that they are withholding at least some of those documents, presumably at least those identifying patients or describing aspects of their treatment. (*See, e.g.,* Defs.' Opp'n 11–12).

**15.** Defendants' counsel has conceded as much. (Sept. 11, 2013 Tr. 6).

**16.** It is perhaps for this reason that defendants have avoided describing in any detail the nature of the various categories of documents that they have declined to produce.

That said, we go further in this analysis, since the interests invoked are said to be those of the patients, some of whom are represented by plaintiffs' class counsel, and some of whom are plainly not. Although the record is largely opaque, obviously patients were provided with treatment services by psychiatrists, psychologists, social workers or other treating sources whose status would presumably trigger potential protection for the patients' treatment records under at least CPLR § 4507 and N.Y. Mental Health Law §§ 33.13 & .16. *See generally Gendal v. Billotti*, 12 Misc.3d 1189(A), 824 N.Y.S.2d 768, 2006 WL 2135525, at *2–5 (Sup.Ct. Suffolk Cty. July 31, 2006). We must therefore be cognizant of those interests notwithstanding the inadequacy of defendants' presentation to document any privilege. At the same time we are fully aware of the fact that this case involves claims on behalf of patients that they were not given proper treatment by SLS and were indeed victimized by SLS and its employees.[17]

■ Although a patient may obtain a right to access his treatment records by voluntarily executing a release, it is also the case that by bringing a lawsuit a patient or other holder of a privilege will be deemed to have waived the pertinent privilege for records relevant to his or her claims, a result that finds its source in the concept of "at-issue" waivers of privileges. *See, e.g., Kinlaw v. Walsh*, 2011 WL 4620966, at *2–3 (S.D.N.Y. Oct. 4, 2011); *see also Dorsey v. N.Y.S. Office of Mental Health*, 2008 WL 2018210, at *1–2 (S.D.N.Y. May 8, 2008); *Szmania v. State*, 82 A.D.3d 1688, 1689–90, 919 N.Y.S.2d 669, 671–72 (4th Dep't 2011); *East Hampton Union Free School Dist. v. Sandpebble Builders Inc.*, 35 Misc.3d 1209(A), 950 N.Y.S.2d 722, 2012 WL 1232964, at *4–5 (Sup.Ct. Suffolk Cty. Apr. 9, 2012). Insofar as these individuals have joined the suit—either by serving as named plaintiffs or else by opting to remain in the case as class members—they may be deemed to have waived any privilege in their treatment rec-

ords. *E.g., In re Sims*, 534 F.3d 117, 131–32 (2d Cir.2008); *Brown v. Kelly*, 2007 WL 1138877, at *2 n. 12 (S.D.N.Y. Apr. 16, 2007). This waiver is designed to protect the defendants, who must be given the right to access pertinent documents in order to defend themselves. Thus, defendants are entitled to use in their defense relevant documents pertaining to the treatment of plaintiffs and class members. That being the case, we see no reason why those portions of treatment records of the plaintiffs and class members that defendants currently possess should not be produced by defendants to plaintiffs' counsel to the extent that they have been requested. *See, e.g., Fox v. Marshall*, 91 A.D.3d 710, 711–12, 936 N.Y.S.2d 307, 309–10 (2d Dep't 2012).

■ Moreover, to the extent that plaintiffs' counsel has sought specific treatment records of at least some class members in discovery—although the record before us does not reflect the extent of those requests other than in the form of a demand for administrative exhibits that presumably encompass at least some of those records—production is appropriate without first demanding execution of releases by those former patients. Releases are needed when a plaintiff has waived privilege but the documents are in the possession of a non-litigant. In such circumstances the release assures the custodian protection against a possible claim of impermissible disclosure, an assurance that then permits the discovering party to access the documents. In this case, however, SLS presumably has custody or control over those documents, and a separate release executed by plaintiffs and class members should therefore be unnecessary. Moreover, obtaining releases from many potentially affected class members may well be impractical, and since class members were on specific and timely notice that their records were going to be available for disclosure (albeit subject to appropriate confidential handling), there is no prospect of unfairness to them.[18]

---

**17.** This fact readily distinguishes the case cited by defendants in which the family of a murder victim killed by a patient of SLS sought the unsealing of the entire set of administrative records. (*See* Callan Oct. 3, 2013 letter Ex. A at 1, 7).

**18.** It bears emphasis that class members have been put on notice that their records may be

In arguing that the sealing order precludes production of documents requested by plaintiffs' counsel, the defendants emphasize the statutory policy that protects the identity of mental-health patients, a policy embodied not only in the psychotherapist-patient privilege, *see* CPLR § 4507, but also in pertinent provisions of the Mental Health Law, §§ 33.13 & .16, and federal legislation embodied in HIPAA. (Defs.' Opp'n 8–9). Indeed, it was this concern with the identification of patients that formed the predicate for the application by SLS for entry of a sealing order in the State Supreme Court. (*See* Callan Decl. Ex. E).

We note that the privilege defined in section 4507 appears to cover communications between the patient and the psychotherapist, as it incorporates the terms of CPLR § 4503(a)(1), which defines the scope of the attorney-client privilege. Nonetheless, as defendants state, the courts have particularly focused on the need to protect patients from the potential embarrassment of being publicly identified as mental patients. *See Rogers v. NYU Hospitals Center*, 8 Misc.3d 730, 733, 795 N.Y.S.2d 438, 441 (Sup.Ct.N.Y.Cty.2005) ("Mental Hygiene Law § 33.13(c) prohibits even the identification of mental-health patients to insulate them from humiliation and embarrassment").

As we have noted, however, to the extent that plaintiffs and class members have chosen to pursue claims based squarely on their treatment at SLS, they have unquestionably waived their privilege in this respect. That said, it is plainly appropriate to shield their identities and course of treatment from the public by requiring that these documents be treated on an "attorney's eyes only" basis— that is, limited in their disclosure to counsel, designated experts, attorneys' staff, and court staff—for present purposes. Whether this regime needs to be altered for trial may be addressed at a later stage.

This conclusion is not altered by the cited terms of the New York Mental Health Law or HIPAA. Section 33.13 of the Mental Health Law requires each licensed mental health facility to maintain clinical records for each patient and specifies that such records "shall not be a public record and shall not be released by the [OMH] or its facilities to any person or agency outside of [OMH]", but with certain exceptions—notably, "pursuant to an order of a court of record requiring disclosure upon a finding by the court that the interests of justice significantly outweigh the need for confidentiality. . . ." N.Y. Mental Health Law § 33.13(c)(1), and "to attorneys representing patients or clients in proceedings in which the patients' or clients' involuntary hospitalization or assisted outpatient treatment is in issue." *Id.* at § 33.13(c)(3).

In view of the fact that the disclosure sought here is to attorneys representing the patients whose records are requested, and that the reason for asking for disclosure is to allow those same patients to pursue claims for mistreatment against the facility, it is readily apparent that "the interests of justice [in limited disclosure pursuant to an appropriate confidentiality order] significantly out-

subject to at least limited disclosure in this lawsuit. Shortly after class certification, representatives of the defendants apparently contacted at least some class members and warned them—incorrectly—that their treatment records could well be publicly disclosed if they joined the class. This conduct led Judge Robinson to make findings of improper behavior by defendants and led to a second class notice, which—unlike the first—specifically referred to the handling of treatment records and stated that "your records will be treated by the court, the parties and their lawyers as confidential, to the extent permitted by law". The Notice also observed that "[t]o ensure this", the District Court was enclosing a copy of the protective order previously entered by the court, and that order stated that "[a]ny records relating to treatment rendered to any class member by defendants . . . or by any other

medical practitioner shall be deemed confidential" and that "[a]ny such records which any party wishes to file during the course of the litigation shall be filed under seal with the Clerk of the Court" and would "not be disseminated except as set forth in paragraph 3", which in turn limited dissemination of the treatment records to the court, counsel and staff, experts, and insurance company representatives and to witnesses at deposition or trial only if the documents were material to the witness's testimony. *See Romano v. SLS Residential, Inc.*, 253 F.R.D. 292, 293–300 (S.D.N.Y.2008); Follow–Up Class Action Notice at 1; Watkins Aff. Ex. 14 (Confidentiality Stip. & Order ¶¶ 2–3). In short, the class members were on notice that treatment records would be disclosed at least to counsel and the court.

weigh the need for confidentiality". Indeed, to deny former patients relevant information that may assist them in pursuing their claims of mistreatment at the hands of the very institutions that are resisting disclosure would be a manifest miscarriage of justice. *See generally Del Terzo v. Hosp. for Special Surgery*, 95 A.D.3d 551, 553, 944 N.Y.S.2d 79, 81 (1st Dep't 2012) (discussing *Napoleoni v. Union Hosp. of Bronx*, 207 A.D.2d 660, 662, 616 N.Y.S.2d 38, 39–40 (1st Dep't 1994)). Moreover, although section 33.13(c)(3)—insofar as it addresses the specific circumstances of involuntary hospitalization or out-patient treatment—does not directly apply here, the definition of this exception is strongly suggestive as well of the fact that the need for the patient to protect his or her own interests is an appropriate basis for disclosure under this statute.

Similarly, Mental Health Law § 33.16 protects from disclosure "evidence at the [administrative] hearing" if it "relates to the identity, condition or clinical record of a [mental health services] patient", but it specifies that disclosure may be ordered by a court. N.Y. Mental Health Law § 33.16(d)(4). For reasons already noted, such an order, on appropriate protective terms, is justified here.

Finally, HIPAA itself does not present an obstacle to disclosure here. The pertinent provisions are found in the regulations issued pursuant to that statute. 45 C.F.R. § 164.512(e)(1)(v)(A). They

> permit[ ] disclosure of protected health records in a judicial proceeding if the court enters the parties' qualified protective order which:
>
> (A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and
>
> (B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

*Tavares v. Lawrence & Memorial Hosp.*, 2012 WL 4321961, at *11 n. 24 (D.Conn. Sept. 20, 2012). *See also Tavares v. Lawrence &*

*Memorial Hosp.*, 2012 WL 5929949, at *4–5 (D.Conn. Nov. 27, 2012). Imposition of such terms is entirely appropriate in view of the fact that we are authorizing limited disclosure but without requiring plaintiffs' counsel to attempt to obtain releases from all affected class members.

As for non-members of the class, we cannot make an inference of waiver of any privilege, and we are properly sensitive to the protection of the rights of those patients. Nonetheless we do not view New York law as invariably precluding any use of non-litigant patient records regardless of circumstances. *See, e.g., Gendal*, 2006 WL 2135525, at *3 (offering examples of circumstances in which non-party records may be disclosed) (citing cases). In this case there are specific circumstances that suggest some potential grounds for limited disclosure. First, as we have noted, on the OMH appeal from the first Article 78 proceeding the Appellate Division declined to seal the record and instead ordered simply a redaction of patient names and apparently other potentially identifying information. (Callan Decl. Ex. A at 2; Sept. 11, 2013 Tr. 9). Second, this directive appears to be generally consistent with other New York caselaw addressing statutory privileges and focusing on redaction of identifying information—including the doctor-patient privilege, *see, e.g., Frederick R.C. v. Helene C*, 153 Misc.2d 660, 662, 582 N.Y.S.2d 926, 928 (Sup.Ct. Suffolk Cty.1992); *see also Schulman v. New York City Health & Hosp. Corp.*, 38 N.Y.2d 234, 241, 379 N.Y.S.2d 702, 706, 342 N.E.2d 501 (1975) (citing confidentiality of challenged form identifying abortion patients); *Silvan v. Silvan*, 93 A.D.2d 790, 790, 461 N.Y.S.2d 826, 827 (1st Dep't 1982); *Gendal*, 2006 WL 2135525, at *3—and it is also consistent with the carefully elaborated analysis of Judge Weinstein in *Lora v. Board of Educ.*, 74 F.R.D. 565 (E.D.N.Y.1977), in which the court addressed at length the policies underlying the psychotherapist-patient and related privileges and developed a compromise to allow plaintiffs' counsel access to treatment records because they were an important source of evidence in that case, while protecting the privacy of the patients by requiring a comparable form of redaction of

patient-identifying information. *Id.* at 576–87. *See also Frederick R.C.*, 153 Misc.2d at 662, 582 N.Y.S.2d at 928 (citing *Lora* with approval). (*Compare* Callan Oct. 3, 2013 letter to the Court Ex. A at 13–16 (arguing against simple redaction if record is released to a non-patient litigant)).

Here records of treatment of the class members are plainly essential if they are to demonstrate that they were subjected to the misconduct that they allege took place at the SLS facilities during the relevant time. This need for such records is not altered by Judge Duffy's collateral-estoppel decision, which simply refers to limited agency findings of specific incidents and certain practices of the defendants. Those administrative findings did not specify either how widespread the improper practices were or whether class members were affected by them, much less whether any such effect was felt during the class period. As for non-class-member patients, plaintiffs have not as yet explicitly articulated a need for those records in view of the holding of this court that collateral estoppel will apply to all findings of the OMH that were upheld, explicitly or implicitly, by the Appellate Division. Nonetheless, in view of defendants' repeated representations that they intend to move to decertify the class, plaintiffs' access to those records, even in redacted form, may be significant, if not essential. If plaintiffs are able to make such a showing, we will consider ordering disclosure of those records for the class period in a redacted form.

In sum, the exhibits to the OMH transcripts are not to be withheld on the current record, but are to be produced pursuant to an appropriate confidentiality order. There remains the question of the status of the hearing transcripts.

 The transcripts are plainly relevant insofar as they presumably reflect testimony that underlay not only the findings of OMH but the holdings of the Appellate Division that affirmed those findings and the sanctions imposed by the agency. It is not clear whether the contents of those transcripts reveal privileged information, and to the extent that they do not, plaintiffs are entitled to access at least those created during the first set of administrative hearings—which pertained at least in part to events during the class period—since they are self-evidently relevant under Rule 26, and it appears that Justice Nikolai did not intend his sealing order to apply to those records filed in the Appellate Division.

If defendants wish to invoke privilege as to any specific segments of the balance of the transcripts, they are to do so by February 26, 2014. In any event, to the extent that the transcripts reflect the identities of patients who are not class members, the names and other identifying information of those individuals are to be redacted.

The parties are to submit a proposed confidentiality order by February 19, 2014, consistent with the rulings that we have made. If they cannot agree on the proposed terms, each side may submit its own version on that date and, within three days thereafter, provide a written statement summarizing the differences between the two submissions and the reason why the submitting party's version should be adopted.

### F. *The Policy Documents*

Plaintiffs have sought policy documents for the class period, and complain that defendants have produced only documents for a later period. (Pls.' Mem. 3–4). Defendants contend that they have provided policy documents that do in fact date from the pertinent time period. (Defs.' Opp'n 2). On the current record we are unable to make a finding that defendants' production is deficient in this respect, and accordingly we leave plaintiffs with the option of deposing one or more knowledgable individuals concerning both the document-retention practices of SLS and defendants' search for the relevant documents. Such depositions, if any, are to be completed by March 1, 2014.

### G. *The Remaining Schedule*

By recent correspondence counsel for both sides have identified unfinished discovery items that still need completion. (Callan January 15, 2014 letter; Watkins Jan. 17, 2014 letter). Both propose adjourning the now-passed deadline to complete discovery

until March 15, 2014. We grant that extension.

## CONCLUSION

For the reasons stated, plaintiffs' motion to compel is granted in part, to the extent stated. Defendants are to produce to plaintiffs the administrative hearing transcripts from the first set of administrative hearings and all exhibits to the OMH transcripts, pursuant to an appropriate confidentiality order. The deadline to complete fact discovery is adjourned to March 15, 2014.